UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| INGRAM BARGE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:10-cv-00110 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| CENTURY ALUMINUM OF WEST ) | |
| VIRGINIA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The defendant, Century Aluminum of West Virginia, Inc. ("Century"), has filed a Motion to Reconsider the Court's Memorandum of August 2, 2012 or, Alternatively, to Make Additional Findings to Avoid Confusion at Damages Hearing ("Motion for Reconsideration") (Docket No. 101),[1] to which the plaintiff Ingram Barge Company ("Ingram Barge"), filed a Response in opposition (Docket No. 104), and Century filed a Reply (Docket No. 108). Subject to the clarifications set forth herein, the Motion for Reconsideration will be denied.

## BACKGROUND

On August 1, 2012, the court denied Century's Motion for Summary Judgment and granted Ingram Barge's Cross-Motion for Summary Judgment, subject to a determination of Ingram Barge's damages. *See Ingram Barge Co. v. Century Aluminum of W. Va., Inc.*, No. 3:10-cv-00110, 2012 WL 3150666 (M.D. Tenn. Aug. 1, 2012) (hereinafter "*Ingram Barge*") [Docket No. 99 in this case; associated Order at Docket No. 100].

---

[1]Although Century's motion identifies the court's previous opinion as dated August 2, 2012, the court's opinion was actually issued on August 1, 2012.

In its opinion, the court found that the Agreements between Century and Ingram Barge[2] did not constitute requirements contracts and that Century had breached the Agreements by failing to ship the specified volumes of alumina and coke to its smelter in Ravenswood, West Virginia. The court also found that Ingram Barge had suffered some measure of damages in the form of lost profits due to Century's breach, a holding in part based on the damages standards articulated in *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42 (Tenn. Ct. App. 2004) and *Phillips Contractor's & Mgmt., LLC v. Stealth Grp. LLC*, No. E2006-01960-COA-R3-CV, 2007 WL 1373189 (Tenn. Ct. App. May 10, 2007). *See Ingram Barge*, 2012 WL 3150666, at *11-*13. However, the court expressly did not reach the merits of Century's argument that, for several reasons, Ingram Barge's lost profits estimate was overstated, because those arguments related to the appropriate measure of Ingram Barge's damages, not their existence. *Id.* at *11-12. The court stated that Ingram Barge could raise at the damages phase its objections to Ingram Barge's damages model, which could result in a downward adjustment to Ingram Barge's recovery, as appropriate. *Id.* at 13.

In its Motion for Reconsideration, Century argues that the court should reconsider its holding in favor of Ingram Barge on the issue of liability for several reasons. First, Century argues that the court improperly relied on *Waggoner*, which was a tort case, in determining the legal standard for ascertaining whether Ingram Barge had established its damages with the

---

[2]On September 28, 2006, Ingram Barge and Century entered into two agreements related to the transportation of materials to Century's smelting facility in Ravenswood, West Virginia through December 31, 2010, one relating to the transportation of alumina (*see* Docket No. 85, Ex. 1), the other relating to the transportation of calcined coke (*id.*, Ex. 2). As with the court's opinion in *Ingram Barge*, the court will refer to these agreements collectively as the "Agreements" herein. *See Ingram Barge*, 2012 WL 3150666, at *1.

requisite certainty for purposes of liability. Century contends that, if the court had applied the correct legal standard, the court would have concluded that "Ingram has failed to show – and cannot show – that it would have made any profit on Century's future shipments, for the simple reason that [Ingram Barge's] revenues and profits were entirely dependent on how Century might have exercised its right to direct Ingram's performance." (Docket No. 102 at p. 5.) Second, Century argues that the court improperly concluded that secondary shipping routes were to be utilized by Century "only as necessary," because the Agreements in fact permitted Century unfettered discretion to ship along multiple routes. Because of the "wild uncertainty" in pricing future routes at Century's discretion, Century argues that the Agreements are "too indefinite to be enforceable" if interpreted as anything other than requirements contracts. (*Id.* at p. 7.) As a corollary, they argue that "the only basis for enforcing the [Agreements] is as requirements contracts . . . ." (*Id.*) Third, Century argues that the court improperly construed the Agreements to be unambiguous as written and that, had the court considered the parol evidence, it would have found that the evidence conclusively demonstrated that the Agreements constitute requirements contracts. (*Id.* at pp. 8-9.)

Century also argues that, at a minimum, the court should clarify that (1) "Century, not Ingram, had the absolute right to designate the rate and route of shipment"; and (2) "Ingram may not carry its burden of establishing the amount of damages simply by proving its average profits during the period prior to Century's cessation of shipments." (*Id.* at p. 9.) Century asks the court to declare that Ingram Barge's damages "must be limited to profits (if any) Ingram is able to show it would have earned on the minimum annual revenues from Century's shipment of cargo at the least expensive rate stipulated in the [Agreements]." (*Id.*)

3

## **STANDARD OF REVIEW**

The parties do not agree on the standard of review that governs the pending motion. In its motion and supporting Memorandum, Century did not reference any federal rule or applicable legal standard that should govern the motion. In its Response, Ingram Barge stated that Fed. R. Civ. P. 59(e), which permits district courts to grant motions to alter or amend a judgment, should apply. In its Reply, Century argues that the court's August 1, 2012 Order does not a constitute a "judgment" for purposes of Rule 59, but instead constitutes a partial summary judgment order that the court can modify at any time prior to summary judgment. Century suggests in a footnote that the motion should be governed by Rule 54(b), although Century does not articulate any legal standard that the court should apply. Neither party has cited to any case involving the circumstances presented here, in which the court has granted summary judgment to one party on the issue of liability, subject only to a determination of damages.

Rule 59(a) states as follows: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(a) (2012) (emphasis added). The rule presumes that the court has entered a final judgment on the case docket. Here, although the court has found that, subject to a determination of damages, Ingram Barge will be entitled to summary judgment, the court has not entered a judgment in the case. Therefore, Rule 59(a) does not apply.

For purposes of the Motion for Reconsideration, the court will treat the August 1, 2012 Order as an interlocutory order. *See Glass v. Nw. Airlines, Inc.*, 798 F. Supp. 2d 902, 906 n.2, 908 (W.D. Tenn. 2011) (finding that Rule 54(b), not Rule 59(e), governed motion for reconsideration of partial summary judgment order relating to contract claims "because judgment

has not issued"); *French v Daviess Cnty., Ky.*, Civil Action No. 4:07CV-105-M, 2009 WL 2589513, at *1 n.2 (W.D. Ky. Aug. 19, 2009) (applying Rule 54(b) to motion for reconsideration of partial summary judgment order because no judgment had issued). Although the Federal Rules of Civil Procedure do not explicitly address motions to reconsider interlocutory orders, "[d]istricts courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) and *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see also In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009) ("[A] district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case.") (citing *Rodriguez*, 89 F. App'x at 959 and *Mallory*, 922 F.2d at 1282).

Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (internal quotation marks omitted) (internal brackets omitted). Courts traditionally will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959); *see also Glass*, 798 F. Supp. 2d at 906-907. This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7.[3]

---

[3]Some district courts applying this standard have also stated that a motion to reconsider under Rule 54(b) should not be used to relitigate old matters, such as arguments previously rejected by the court. *Glass*, 798 F. Supp. 2d. at 907; *Stringer v. Nat'l Football League*, 749 F.

Century has not identified any intervening change in controlling law or presented newly available evidence. Therefore, the court construes Century as arguing that the court's August 1, 2012 Order reflected a clear error of law and/or resulted in a manifest injustice to Century.

## ANALYSIS

### I. Overview

As an initial matter, several of Century's contentions are premised on its belief that the Agreements permitted Century unfettered discretion to determine the routes along which Ingram Barge was obligated to transport the alumina and calcined coke. Century takes particular issue with the court's previous statement that the terms "primary" and "alternate" "suggested" that product would be transported along the primary routes in the first instance and along the secondary routes only as necessary. Century also selectively quotes from the court's Order to suggest that the court found that Ingram Barge's damages model had carried or necessarily would carry its damages burden.

As the court previously acknowledged in *Ingram Barge*, the Agreements indeed permitted Century discretion to ship along multiple alternate routes, each of which had an associated rate that ranged significantly. *See Ingram Barge*, 2012 WL 315066, at *11. It appeared from the record that the alternate routes were included at Century's behest as alternatives in case of *force majeure*, an observation that Century does not address in its Motion for Reconsideration. *Id.* at *3. At any rate, the court's discussion of the terms "primary" and "secondary" was not meant to preclude Century from arguing, at the damages stage, that the discretion vested in it under the Agreements was relevant to the proper assessment of its

---

Supp. 2d 680, 700 (S.D. Ohio 2009).

damages.

Furthermore, Century's quotation from the August 1, 2012 Opinion omits the crux of the court's finding concerning Century's criticisms of Ingram Barge's damages model: "Whatever the merits of these theories, they bear on *the appropriate measure of Ingram Barge's damages, not their existence*. Because of Century's breach, Ingram Barge was not able to ship several hundred thousand tons of alumina and coke over a nearly two-year period, on which Ingram Barge would have received *some* profit margin." *Ingram Barge*, 2012 WL 3150666, at *12 (emphases added). Having made this finding, the court simply observed in the next paragraph that Ingram Barge had formulated a damages calculation that, broadly speaking, purported to project what Ingram Barge would have earned going forward, based on a weighted average of what it had earned under the Agreements through 2009. Although the court stated that Ingram Barge's use of weighted averages broadly comported with the standard articulated in *Waggoner*, the court did not find that Ingram Barge's model would necessarily arrive at the correct figure, that Century did not have potentially viable arguments for a downward reduction of the final damages calculation, or that Century would be precluded from articulating a competing basis for assessing Ingram Barge's lost profits. For purposes of liability, the court simply determined that the record plainly established that Ingram Barge had suffered *some* measure of damages from being unable to transport (and to get paid for transporting) several hundred thousand tons of material under the Agreements.

With these considerations in mind, the court will address each of Century's specific arguments.

## II. **Damages**

Century argues that, instead of applying *Waggoner* on the issue of contractual damages, the court should have applied the standard articulated in two other decisions applying Tennessee law. *See BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001) ("Generally speaking, damages for breach of contract include only such as are incidental to or directly caused by the breach and may be reasonably supposed to have entered into the contemplation of the parties. The general rule seeks to protect the non-breaching party's expectation interest.") (internal citation and quotation marks omitted); *Great Am. Music Mach., Inc. v. Mid-S. Record Pressing Co.*, 393 F. Supp. 877, 885 (M.D. Tenn. 1975) ("The law is well settled that the injured party is not to be put in a better position by a recovery of damages for breach of contract than he would have been in if there had been full performance.") Century appears to contend that, in applying *Waggoner*, the court erroneously failed to consider what losses the parties reasonably expected to incur in the event of breach. Century argues that, given its contractual discretion to ship along multiple routes, (1) Ingram Barge's damages are "entirely indeterminate," thereby failing to establish the damages element of its claims for contractual breach; and (2) it would be unreasonable for Ingram Barge to recover its extrapolated future profits on the basis of profits earned in prior years, because Century could have shipped along routes with the lowest rates, on which Ingram Barge presumably would have earned lower profits than its damages model projects.

With respect to the issue of applying *Waggoner*, Century essentially waived any objection to the court's application of that standard by failing to address it at the summary judgment stage. In support of its Cross-Motion for Summary Judgment and Response in Opposition to Century's Motion for Summary Judgment, Ingram Barge had relied extensively on

8

*Waggoner* in articulating the standard applicable to its claim for lost profits (*see* Docket No. 73 at pp. 27-30), to which Century raised no objection in its Reply thereto (Docket No. 87).[4] Regardless, the court finds no inconsistency between the principles articulated in *BVT Lebanon* and *Great American* and the principles that informed the court's holding that Ingram Barge had, to a reasonable certainty, suffered *some* measure of damages from Century's breach. Indeed, as this court noted in *Ingram Barge*, the Tennessee Court of Appeals has applied the *Waggoner* damages standard to a breach of contract action. *See Phillips*, 2007 WL 1373189, at *2-*3 [cited in *Ingram Barge* at *11]; *see also Moran Indus., Inc. v. Mr. Transmission of Chattanooga, Inc.*, 725 F. Supp. 2d 712, 718 (E.D. Tenn. 2010) (applying *Waggoner* in breach of contract action).

Moreover, the "reasonable certainty" standard for determining the *existence* of lost profits damages articulated in *Waggoner* reflects the same standard applied by Tennessee courts in breach of contract actions. *See McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 200 (Tenn. Ct. App. 1990) (with respect to breach of contract, "[t]he proper measure of damages is the net profits the subcontractor would have made had it been permitted to complete the contract," and, "when lost profits are the proper measure of damages, they need only be proved with reasonable certainty, not with mathematical precision"); *W. Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987) ("There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount. . . . [I]t is now generally held that the uncertainty which prevents a recovery is *uncertainty as the fact of the damage* and not as

---

[4]Indeed, in its Memorandum in support of a Motion to Compel in this case, Century in part relied on *Waggoner* in successfully demanding production of certain financial information from Ingram Barge, which it argued was relevant to damages. (*See* Docket No. 29 at pp. 7-8.)

to its amount and that *where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude recovery.*") (emphases added) (quoting *Stevens v. Moore*, 139 S.W.2d 710, 719 (1940)). Thus, in applying the "reasonable certainty" standard for purposes of Century's liability to Ingram Barge for breach of contract, the court did not commit a clear error of law.

With respect to Century's argument that Ingram Barge's damages are "entirely indeterminate," Century is essentially attempting to re-assert a legal position that the court previously rejected. At any rate, the court reiterates that, even assuming that Century could (and would) have shipped all of the remaining tonnage along the lowest-priced routes, that assumption would affect the *amount* of lost profits suffered by Ingram Barge, not the existence of such damages.

As to Century's remaining argument that it would be unreasonable for Ingram Barge to recover projected damages based on past performance under the Agreements, that argument similarly relates to the appropriate measure of Ingram Barge's damages, not their existence. Century again misreads the court's prior opinion: the court has not held that Ingram Barge's damages model necessarily has carried or will carry its evidentiary burden to recover a particular amount, nor has the court precluded Century from attacking the assumptions in Ingram Barge's model, from positing its own proof as to what Ingram Barge's profits likely would have been in the absence of Century's breach, or from arguing that Ingram Barge's damages are limited as a matter of law.

On a related point, Century appears to take the position that the court should limit Ingram Barge's recovery to the profits that Ingram Barge would have accrued if Century had shipped all

of the remaining tonnage along the lowest-priced routes. The court will not impose this arbitrary limitation. Century has not even established that it *could* have shipped all of the remaining tonnage from the lowest-priced origin points (*i.e.*, whether sufficient alumina and coke were available at those facilities), let alone whether Century realistically *would* have shipped all of the tonnage from those origin points. Indeed, Century's suggested arbitrary damages cap appears to bear no relationship to Century's actual performance under the Agreements. Had Century's prior shipping decisions been predicated only on the cost of the shipping route, Century would have shipped all of the alumina and coke along the least expensive route identified in each Agreement. To the contrary, Century in fact shipped material along multiple routes, some of which were higher-priced than others, thereby demonstrating that some factor(s) other than price alone must have motivated and/or controlled the routes that Century selected. If those same factors would have precluded Century from shipping all of the material from the lowest-priced origin points, or if there was otherwise no realistic likelihood that Century would have shipped all of the tonnage from those origin points, then capping Ingram Barge's damages by reference to the lowest-priced routes would seem to place Ingram Barge in a worse position than it would have been but for Century's breach. At any rate, the court makes no findings in this regard, other than to reiterate that the parties will have the opportunity to present evidence and legal argument concerning the appropriate manner of assessing Ingram Barge's expectation damages.[5]

---

[5] Ingram Barge's damages model simply assumes that, absent breach, Century would have continued to ship the alumina and coke along the same routes in approximately the same quantities. Whether this assumption is more reasonable than Century's assumption that Century would have shipped product only along the lowest-priced routes – a position for which Century has not yet provided testimonial support – is a matter that will appropriately be considered in the context of the damages determination.

### III. Liability

Century urges the court to reconsider its holding that the Agreements are not requirements contracts. Century essentially reargues legal positions that the court previously considered and rejected, while myopically focusing on one paragraph in the court's summary judgment opinion relating to the "primary" and "secondary" routes identified in the Agreements.

As the court previously explained in detail, the Agreements were the product of extensive negotiation by sophisticated parties with input from legal counsel, were signed and/or initialed on each page by experienced representatives of each contracting party, contained many paragraphs containing highly specific terms setting forth the parties' respective obligations, and included a merger clause specifying that the Agreements represented "the entire understanding between the parties hereto." As the court found, the Agreements did not contain the requisite indicia of a requirements contract, including (1) basic contractual language establishing that Ingram Barge was obligated to transport all of Century's production needs at the smelter – whether "from zero to infinity" tons, as Century's corporate representative testified – rather than a guaranteed and quantifiable volume; and (2) an exclusivity provision contractually obligating Century to utilize only Ingram Barge to meet its production needs at the smelter. Instead, the Agreements contained a quantifiable quantity term and contractually negotiated contract rates for specific shipping routes. Moreover, the Agreements contained a provision specifying that Century's shipping obligation could be relieved in the case of *force majeure*, but contained no provisions exempting Century from performing on the basis of prevailing economic conditions or its own business decision to shut down the smelter. Under these circumstances, the court found that the Agreements were not ambiguous as to quantity, facially did not constitute

requirement contracts, and did not require parol evidence to elucidate their meaning. Nevertheless, Century continues to argue that the court should look to parol evidence to rewrite the terms of the Agreements, notwithstanding the merger clause. Given that the court will not reconsider its finding that the contract is unambiguous, the court will not consider the parol evidence.[6]

As to Century's final argument for reconsideration, the court has already rejected Century's argument that the Agreements may only be enforced as requirements contracts. Century offers no persuasive reason to reconsider that decision.[7]

## **CONCLUSION**

Subject to the clarifications set forth herein, Century's Motion to Reconsider will be denied.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] Moreover, as the court noted in its previous opinion, the parol evidence did not persuade the court to rewrite the Agreements in the manner urged by Century, which would have required the court to ignore and/or contradict certain express terms contained therein. *See Ingram Barge*, 2012 WL 3150666, at *9.

[7] Century appears to argue that the court improperly held in its August 1, 2012 Opinion that the contracts were too indefinite to be enforced as requirements contracts. The court made no such holding in the first place. *See Ingram Barge*, 2012 WL 3150666, at *10 n.12.

13